UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ANDREA FRIPP JAMES, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> ) <br> RICHLAND COUNTY RECREATION ) <br> COMMISSION, JAMES BROWN, III, ) <br> MARIE GREEN, BARBARA MICKENS, ) <br> and DAVID STRINGER, in their ) <br> individual capacities, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No.: 3:16-cv-1008-MGL-TER <br><br><br><br><br> **REPORT AND RECOMMENDATION** |

## I.   INTRODUCTION

This action arises out of Plaintiff's employment with the Richland County Recreation Commission.  Plaintiff alleges sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. as well as state law causes of action for defamation and civil conspiracy.  Presently before the court is Defendants' Motion to Dismiss (Document # 30) Plaintiff's claims for defamation and civil conspiracy.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

## II.   FACTUAL ALLEGATIONS

At all times relevant to the allegations set forth in the amended complaint, Plaintiff was employed as the Division Head of Financial Operations for the Richland County Recreation Commission (RCRC).  Am. Compl. ¶ 1. Defendant Brown is the Executive Director of the RCRC,

Defendant Stringer is the Division Head of Human Resources for the RCRC and Defendants Green and Mickens serve on the board for the RCRC. Am. Compl. ¶¶ 3-6. Prior to December 2015, the Plaintiff reported to the Assistant Executive Director who then reported to Defendant Brown, the Executive Director. Am. Compl. ¶ 12. Plaintiff alleges that Brown sexually harassed her on numerous occasions and that she complained to Stringer in human resources to no avail. Am. Compl. ¶¶ 13-16.

In 2014, the board received anonymous letters complaining about Brown and the RCRC, but Brown made it clear that he had at least four votes on the board to avoid any action against him. He stated that he helped Green and Mickens financially and that other members of the board, Furgess and Martin, were on his side. On September 22, 2014, a motion was passed by a 5-2 vote to hire an attorney to conduct an investigation of Brown. However, Martin and Furgess later rescinded their vote and a new motion to rescind the earlier decision for an investigation, passed by a 4-3 vote. Brown told Plaintiff that he was the most powerful man in South Carolina and could not be touched. Am. Compl. ¶ 17.

In September of 2015, Plaintiff refused to sign a blank purchase order for Erica Smalls, the Human Resources Manager. Soon thereafter, Brown directed that all purchase orders should go to him. Plaintiff met with Brown to voice her concerns over the arrangement and her concerns that Brown was telling others that she and her supervisor were having an inappropriate relationship. Brown told Plaintiff it hurt his feelings when she went into her supervisor's office, and issued a directive that the supervisor was not to go into Plaintiff's office. Am. Compl. ¶ 18.

Brown continued to make false comments that Plaintiff was having an inappropriate relationship with her supervisor and that she refused to speak to Brown and attempted to get one of Plaintiff's subordinates to make negative comments about Plaintiff. Am. Compl. ¶ 19-20. In

December of 2015, Brown removed the finance department from under her current supervisor and placed it directly under himself. He also continued to approach Plaintiff's subordinate, who complained to Stringer that she did not want to be involved. The subordinate was then called into a meeting with Stringer and Brown, during which Brown continued to make statements regarding an inappropriate relationship between Plaintiff and her former supervisor and tried to get the subordinate to say that Plaintiff was mistreating her. Am. Compl. ¶ 21. On numerous occasions, Brown made false statements regarding an intimate relationship between Plaintiff and her former supervisor to other RCRC employees and board members. Am. Compl. ¶ 22. Plaintiff filed a written complaint with Stringer in December of 2015, alleging a hostile work environment, sexual harassment, retaliation, defamation, and being asked to do things contrary to RCRC policies and procedures that were not in RCRC's best interests. Am. Compl. ¶ 23.

RCRC hired a third party attorney, Linda Edwards, to investigate the complaints against Brown. Edwards interviewed Plaintiff and many other employees regarding the allegations against Brown. The report was presented to the board and the board passed a vote of confidence in favor of Brown by a 5-2 vote. Both Green and Mickens have acted openly hostile toward Plaintiff since December of 2015. Am. Compl. ¶¶ 24-25.

In January of 2016, Brown called a staff meeting, during which he stated that the board wanted to have a buffer between Brown and the staff, and Tara Dickerson was promoted to a newly created position of Chief of Staff. Am. Compl. ¶ 26. Thereafter, Brown and Stringer began questioning why the Foundation, the fund raising arm of the RCRC, reported to Plaintiff. Brown and Stringer began calling Plaintiff's staff, intimidating them about the Foundation and saying that they, along with Green, were going to start coming to the Foundation's board meetings. On February 8, 2016, Brown directed that the Foundation would no longer report to Plaintiff but to Dickerson. Am.

Compl. ¶ 30.

Plaintiff took FMLA leave beginning May 19, 2016, with the intent to return on June 9, 2016. During her leave, Plaintiff received a letter from the RCRC stating that it may refuse to reinstate her to her position at the conclusion of her leave. As a result, Plaintiff returned to work early, on May 26, 2016. Am. Compl. ¶ 33.

Law Enforcement began an investigation into Brown and others related to the RCRC. In June of 2016, the Richland County Council advised that they would withhold funding (over what is required by law) from the RCRC until an external, independant audit is conducted. Despite the investigation and allegations of misconduct, Brown remained in his position as Executive Director. On June 21, 2016, the Richland County Legislation Delegation recommended that Brown be placed on suspension with pay pending the investigations. On June 30, 2016, the media reported complaints made by a whistleblower, which included allegations of sexual comments, bullying, and nepotism. Brown took a leave of absence with pay beginning July 1, 2016. On July 8, 2016, Plaintiff was informed that she was being placed on leave of absence with pay beginning July 11, 2016, the time the audit of the RCRC was scheduled to begin. Am. Compl. ¶¶ 35-36.

### III. STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's defamation and civil conspiracy claims pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

> Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:
>
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.    DISCUSSION

### A.    Defamation

In her defamation claim, Plaintiff alleges that Brown falsely accused her of having an improper sexual relationship with her supervisor, and such comments were published to Plaintiff's co-workers, board members, and others. She alleges that Brown also defamed her by directing that her supervisor could not go into her office and by removing the finance department from under the supervisor. Plaintiff alleges that these comments and actions, made by these Defendants within the

-5-

course and scope of their employment, have directly and indirectly promulgated to the public at large the false insinuation that Plaintiff is unchaste and unfit in her profession. She alleges that the defamatory publications are especially harmful because Plaintiff is married. In addition, Plaintiff alleges that these Defendants made false and defamatory statements concerning Plaintiff's abilities as a manager and her treatment of subordinates to Plaintiff's coworkers and subordinates, which have injured Plaintiff in her profession. Plaintiff alleges that these comments and actions were false and were made with the malicious intent to harm Plaintiff. She alleges that she has suffered injury to her reputation, emotional distress, and mental anguish. Am. Compl. ¶¶ 53-58.

The essential elements of a claim for defamation under South Carolina law are 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006). With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)).

Defendants argue that Plaintiff has failed to state a claim for defamation that is plausible on its face because Plaintiff has included only a formulaic recitation of the elements necessary for such a claim without any factual allegations in support. When reviewing a motion to dismiss, the court must view the factual allegations and all reasonable inferences in favor of the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009). Plaintiff alleges that

after she repeatedly rebuffed Brown's sexual advances, and after she refused to sign a blank purchase order form for someone who had a "close relationship" with Brown, she confronted Brown about making false statements that she was having an inappropriate relationship with her supervisor. Am. Compl. ¶¶ 13, 15, 16, 18. She alleges that Brown stated it hurt his feelings when Plaintiff went into her supervisor's office. Am. Compl. ¶ 18. Even after Plaintiff confronted Brown about it, Plaintiff alleges that he continued to make comments about her having an inappropriate relationship with her supervisor to other employees, including her subordinates, and members of the board. Am. Compl. ¶¶ 19-22. Plaintiff alleges that, because she is married, Brown's alleged defamatory comments about her having a sexual relationship with her supervisor fall into the defamation per se categories of both adultery and unfitness for her profession. Am. Compl. ¶ 55. Plaintiff alleges that Defendant Brown made the alleged defamatory statements with "malicious intent to harm," Am. Compl. ¶ 57. These factual allegations are sufficient to state a cause of action for defamation that is plausible on its face.

Defendants also argue that any alleged comments made by Brown to other employees of the RCRC enjoy a qualified privilege. "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." Murray v. Holnam, Inc., 344 S.C. 129, 140-41, 542 S.E.2d 743, 749 (SC.Ct.App. 2001) (citing Constant v. Spartanburg Steel Prods., Inc., 316 S.C. 86, 447 S.E.2d 194 (1994); Prentiss v. Nationwide Mut. Ins. Co., 256 S.C. 141, 181 S.E.2d 325 (1971)). "Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." Id. (citing Conwell v. Spur Oil Co., 240 S.C. 170, 125 S.E.2d 270 (1962)). Defendants argue that, because Plaintiff made a complaint of sexual harassment, RCRC had a duty to investigate her claims, which required the company to make

inquiries into Plaintiff's conduct. However, "the protection of a qualified privilege may be lost by the manner of its exercise. . . . [F]or a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require." Id. (citations omitted). The question of whether the privilege has been abused is one for the jury, Id. at 140, 542 S.E.2d at 749, and, thus, a determination of whether Brown's alleged defamatory statements were privileged cannot be made at this stage of the litigation.

Finally, Defendants argue that Plaintiff cannot name both the RCRC and Brown on this cause of action because Brown is an agent of the RCRC and, thus, under the South Carolina Tort Claims Act (SCTCA), S.C.Code Ann. §§ 15–78–10 et seq., the RCRC is the only proper party. Section 15-78-70(a) of the SCTCA provides that "an employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b)." Subsection (b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." Defendants argue that none of the exceptions provided in subsection (b) apply here. Plaintiff alleges that Defendant Brown made the alleged defamatory statements with "malicious intent to harm," Am. Compl. ¶ 57, but Defendants argue that this is just a formulaic recitation of the law without any factual allegations in support. As stated above, the court must view all factual allegations and the reasonable inferences therefrom in favor of the plaintiff. Here, Plaintiff has provided sufficient factual allegations of actual malice to state a claim that would take the defamation cause of action outside the SCTCA such that Brown could be held personally liable. In the alternative, if no actual malice is found, RCRC could be held liable for the alleged defamatory statements made by Brown. See Murray, 344 S.C. at 542 S.E.2d

at 748 (noting that "a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority"); see also Rule 8(d)(2) and (3) (allowing for the pleading of alternative theories of recovery). Thus, dismissal of Plaintiff's defamation cause of action is not appropriate.

### B.     Civil Conspiracy

In her civil conspiracy claim, Plaintiff alleges that the individual Defendants, Brown, Stringer, Green and Mickens, met at various times and places, schemed, conspired, and planned in secret, outside the scope of their official duties and supervisory roles, to harass and ostracize Plaintiff in an effort to harm her and cause her to resign or lose authority in her position with RCRC. She alleges that Brown was personally motivated to harm her because she opposed his advances, refused to sign a blank purchase order, and filed a complaint of harassment against him. She alleges that Defendants Stringer, Green, and Mickens were personally motivated to support Brown, and, thus, joined in with him to conspire to harm Plaintiff. Plaintiff alleges that these Defendants used their respective positions of power to strip Plaintiff of her duties, threaten her and her staff, and looked for reasons to take action against her. Plaintiff alleges that this conspiracy to harm her cause special damages, including "causing her to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation as well as incurring attorneys' fees and costs." Am. Compl. ¶¶ 59-63.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989). Defendants first argue that Plaintiff's civil conspiracy claim fails because she fails to allege special damages caused by the alleged conspiracy. "A claim for civil conspiracy must allege additional acts in furtherance

of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 682 S.E.2d 871, 874 (2009) (internal citations omitted). While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. Id. at 116–17, 682 S.E.2d at 875. Plaintiff alleges that the individual Defendants' alleged conspiracy was done "to harm the Plaintiff and to cause her special damages including causing her to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation as well as incurring attorneys' fees and costs." Am. Compl. ¶ 63. Plaintiff does not allege that she suffered ostracization, isolation, embarrassment, or humiliation with respect to her other causes of action. Thus, her allegations of special damages arising from the alleged civil conspiracy are sufficient to survive a Rule 12(b)(6) motion.

Defendants also argue that Plaintiff, as an at-will employee, cannot maintain an action for civil conspiracy against her employer. Under Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979), an at-will employee may not maintain a civil conspiracy action against his employer where the employee alleges that his employer conspired with others to terminate his employment. See also Faile v. Lancaster County, S.C., No. 0:11-cv-2206-CMC, 2013 WL 786447, *4 (D.S.C. Mar. 1, 2013) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). However, in Reed v. Aiken County, No. 1:09-cv-1744-MBS-TER, 2010 WL 2985805, *3 (D.S.C. July 26, 2010), the court held that "the at-will employment doctrine articulated in Angus [v. Burroughs & Chapin Co., 368 S.C.167, 628 S.E.2d 261 (S.C.2006)] and Ross does not govern

-10-

actions by employees based on harm other than termination such as isolation and ostracization." Plaintiff does not allege that the individual Defendants conspired to terminate her employment. Rather, as set forth above, she alleges that they conspired to cause her ostracization, isolation, humiliation, and embarrassment. These allegations are sufficient to allege a conspiracy beyond termination, and, therefore, dismissal of this cause of action at this stage of the litigation against is premature.

Finally, Defendants argue that Plaintiff's civil conspiracy claim fails based upon the intercorporate conspiracy doctrine, which provides that a corporation cannot conspire with itself. See McClain v. Pactiv Corp., 360 S.C. 480, 486, 602 S.E.2d 87, 90 (S.C.Ct.App. 2004) (citing Anderson v. S. Ry. Co., 224 S.C. 65, 69, 77 S.E.2d 350, 351 (1953)). However, this doctrine applies to "a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." McMillan v. Oconee Mem'l Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006); see also Cricket Cove Ventures, LLC v. Gilland, 390 S.C. 312, 325, 701 S.E.2d 39, 46 (Ct. App. 2010) ("In McMillan, our Supreme Court limited this 'intracorporate conspiracy' doctrine to persons acting within the scope of their employment."). Plaintiff alleges that the individual Defendants were "acting, planning, and scheming outside the course and scope of their employment in order to harm Plaintiff and promote personal interests." Am. Compl. ¶ 63. The Plaintiff further alleges that the civil conspiracy "was done as a part of a personal and malicious agenda to harm the Plaintiff." Id. These facts are sufficient to survive dismissal at this stage of the litigation.

Because Plaintiff has pleaded factual allegations that are sufficient to state a claim that is plausible on its face for both defamation and civil conspiracy, Defendants' motion to dismiss should be denied.

-12-

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (Document # 30) be denied.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

November 1, 2016  
Florence, South Carolina